Would you like to call the next case? Case No. 54566, Jennifer Farmer v. Akihara Yamini, M.D. and U.S. University of Chicago, Minnesota Good afternoon. Would the lawyers who are going to argue this on both sides stand, first beginning with the appellant, and tell us your name. Good afternoon, Your Honor. My name is Timothy McCarville, I'll be here. My first name is Farger. Can you spell your last name, counsel? M-C-A-R-D-L-E. I'm joined by my associate, Michael McCarville. No relation. Good afternoon. My name is Anthony Malonco, L-O-N-G-O. I represent the defendants, University of Chicago Medical Center, and Dr. Yamini. As you both probably know, you have 20 minutes each. Would the plaintiff's lawyer like to reserve some of that for rebuttal? Yes. Five minutes? Okay. Whenever you're ready. Do not feel compelled to use your whole 20 minutes, but we will give it to you. Good afternoon, Your Honors. May it please the court and counsel. The issue that we're here for today is whether the court's order for the production and disclosure of plaintiff's mental health records violated the privileges set forth in the Illinois Mental Health and Developmental Disabilities Confidentiality Act. A secondary issue is whether the trial court's order holding me in contempt of court should be vacated. Recognizing the admonition of Abraham Lincoln many years ago concerning a man who chooses to represent himself, I hope to prove him right. The question today is of vital importance to the citizens of this state for those who seek mental health treatment often find themselves seeking the help and protection of the courts. And that protection includes a privilege adopted by the Illinois legislature, which is giving strong protections by the court. This is evidenced by first the Illinois legislature's adoption of this act in addition to privileges which already exist for the disclosure of medical records. And further evidence of the strong protections of this act are that the courts in this state, the Illinois Supreme Court in particular, has consistently recognized the strong protections, including the Norskag Court, the Rita Court, and the Johnston Court. Just so I'm clear what we're talking about, what you're fighting about, the records you're fighting about, is everything that has been highlighted as well as certain pages, I think it's 140 to 249, and that the entirety of that is what you're asking. Yes, Your Honor. The records, and they've been filed under seal. Right. I'm going to do, I'm not going to. We're all going to avoid what they say. Right. But those records involve mental health treatment and diagnoses of this minor. But only the highlighted portions is what you're trying to redact as to most of those records. Yes, Your Honor. Okay. And that includes one which is an entire hospitalization. Right. And those are the records that we seek protection. Okay. The strong protections are also evinced by the language of the acts and how the courts have interpreted the act, so that even when disclosure is deemed appropriate and that the exceptions have been met, they are heavily restricted. The act creates a privilege subject only to thinly tailored and specifically enumerated exceptions. And the exception that we're hearing about today in a case such as this is whether the plaintiff introduced her mental condition as an element of her claim. The recipient of mental health services must place their mental health at issue or disclosure is not permitted. That's directly, that's a quote from the Rita court. Are you willing, or is there some discussion about some limitation on what damages you can seek or are willing, and some way in which you're willing to limit your client's damages as part of, you know. There's been no discussion about that. However, we only seek the neurologic injury damages that are. Well, you're saying that as a result of malpractice, she got meningitis. That's exactly true. The meningitis caused a traumatic brain injury. Yes, sir. The traumatic brain injury, I would think, is manifested in certain ways. That's correct. Let's assume it involves some sort of condition of emotional outburst, for lack of some other descriptive term. Okay. If your client had previously sought medical treatment that involved emotional outbursts, right, and that caused her to have previously seen another physician involving mental health evaluations, why wouldn't that be relevant on the issue of damages that the defendant would say, well, they're claiming these emotional outbursts are a result of the traumatic injury that was a result of the meningitis. Why wouldn't they be entitled to at least explore whether that was a preexisting condition and whether it was the damages were caused or contributed by the most recent insult? Because the Illinois Supreme Court has consistently held that the relevance of that is not an issue that you arrive at unless and until the plaintiff has affirmatively made a claim of their mental health as part of the damages. Well, but you're seeking damages for emotional injury as a result of traumatic brain trauma, right? No. You're not? It's not emotional injury. It's a traumatic brain injury that this patient has. Most of, many of the, she has cognitive losses. She does have outbursts. Okay. She has hearing loss. Right. All attributed to a brain injury caused by meningitis. Yes. Caused by this milk. Right. That's correct. What if she exhibited these same emotional problems earlier? If they were psychological in nature, not related to an organic problem, I submit to the court that the reader court and the statute protects them. But wouldn't a defendant be entitled to explore the relationship to see whether that, in fact, is true or that perhaps the earlier episode, assume there was just for the sake of argument, wouldn't the defendant be entitled to at least explore the possibility that no, no, no, it has nothing to do with this claim. It's preexisting. I think that the Illinois Supreme Court has consistently held no on the answer to that question. They have repeatedly indicated that relevance is only an issue that any court or the defendant is entitled to pursue if the plaintiff has affirmatively put their mental health in issue. And a review of the complaint and the answers to discovery, I think, make clear that we have not done so. Well, there is, I'm sorry. You know, it's part of your element of damage. I suppose if you had represented to the court that my damage claim consists of A, B, C, and D, and none of those relate to an emotional deficit as a result of the traumatic brain injury that was caused by the meningitis, I think it would be much clearer that you're not seeking to inject that into your damage claim. But as long as the damage claim says I'm seeking damages for an emotional insult that was caused by this traumatic brain, how do you preclude somebody from looking into that? The plaintiff's damage claim does not make that assertion, Your Honor. Okay. I mean, the complaint clearly states that the, what is claimed is that the plaintiff developed infectious meningitis and the serious sequelae thereof and suffered injuries of a personal and pecuniary nature. The language from that prayer for relief or that damage claim is almost identical to Rita. And, in fact, in Rita, the court distinguished the fact that emotional injuries, even though there were emotional injuries, that doesn't make it something that overcomes the heavy burden that the defendant has under these circumstances. Well, I suppose, and I understand what you're saying, and it's a good argument, but what if, as discovery progressed and you got into your damages claim, could they resurrect this issue? If it appeared that that's what you were doing, seeking damages for this emotional trauma or whatever? It seems to me that this is a bit premature because you're not really into your damages claim. Well, but the request has been made and the orders, the records have been ordered. Right. And that's why we're here. Yeah. I understand that. But nobody's really gotten into your damages claim, and it seems to me that that's what they're anticipating. The plaintiff has not asserted any psychological damages in this case. We produced, in answer to interrogatory number three, a copy of a report. Actually, we identified a neuropsychologist who saw the plaintiff, not at our request, but to provide recommendations pursuant to accommodations that she needs at school, subsequent to her meningitis and the changes that she has experienced as a result of that. I don't think that that opens any door. The things that are in there, upon which the defendant relied heavily in their brief, were history that were taken from family members and parents that they honestly answered questions as they sought help in the educational process. The report by Dr. Borchert, I think, clearly enumerates in the first paragraph of her summary and conclusions those damages which she believes are a direct result of the traumatic brain injury. Well, somewhere in the briefing, it was mentioned that the defendants, or maybe the trial court said that the defendants would have an opportunity to have your client examined by their expert. Potentially. I mean, the rules provide for that. Right. Now, in the course of that potential examination, wouldn't that expert be entitled to go into the history of your client? I think not. Really? Not as it relates to her history of mental health. These strong protections apply for that. Unless we inject the purely psychological injuries. And the Rita court recognized, even in the Rita court, for example, there were claims of depression. And the cases discussed depression as being both psychological and personal in nature. And the Rita court, even though the claim for depression was made by Mrs. Rita in her deposition and talking about emotional outbursts that Mr. Emilio Rita was having, the court nonetheless upheld the privilege because the privilege is there to protect and to encourage people from seeking the protection of mental health and not giving away their rights, the rights that other citizens have to pursue a claim for personal injuries. Am I right that nothing about protecting these records precludes a defendant from attacking causation, questioning causation in terms of any symptoms that the plaintiff's witnesses say she saw? I would agree with you. I mean, this isn't trying to preclude a defense. It's trying to preclude the production of very specific records. Right. And here we're only talking about a neurological injury, which has nothing to do with any kind of psychological issue or ADHD or whatever possibility we can think of that an individual might have. That's exactly true, Your Honor. That's my understanding. That's the position that the plaintiff takes in this case and the position that we took in the court below. And the defendant relies upon the Pfizer case, which I think is entirely different, distinguishable, and in fact demonstrates how, in fact, a plaintiff does inject the psychological injury. They did so in two ways. First of all, the peripheral relief was dramatically different, talking about an injury in both mind and body. Second, in response to an interrogatory asking specifically if the plaintiff sought damages for psychological injury, the plaintiff affirmatively responded by naming physicians who were actively providing psychological treatment to the plaintiff. And that's why the Pfizer case is different and I think has little to do with the facts presented in the case before the court today. Going beyond whether the plaintiff has injected her psychological or mental health into this case, even if that were so, the court would have to find it relevant and not prejudicial, and this court has had an opportunity to review the records and certainly the prejudice involved in disclosing the records of this child would outweigh any benefit that the defendant could be provided in light of the fact that they're not precluded from a defense hiring their own experts and evaluating what's available. The defendant has also raised a fundamental fairness exception, the D.C. case. It's a very narrow exception. It is. That's all I was going to point out. In that case, in fact, Norskag, which followed D.C., the same argument was made and in interpreting Norskag they said nothing in the Norskag case, there's nothing there to indicate that the plaintiff was invoking the privilege as a means to subvert the legal process, and certainly we're not doing that in this case, and I think that's apparent from your review of the medical records that have been. Well, it looks like you redacted them pretty narrowly. I mean, you redacted only very specific things. We did our best to keep it narrow, and I believe that the defendants have the redacted copies with all the other records, but we didn't withhold that enormous packet of records. I'll go ahead. I'm sorry. What stage is this case at? This case is still in written discovery. Written discovery. So a lot more could develop through oral discovery of the various experts or anything else. I can tell you that the plaintiff and her family will not be testifying that they're seeking damages for emotional, psychological injury or any treatment that she may have had or needs in the future for any of that. That's not what this case is about. It's about getting meningitis from a torn dura. It's a brain injury. I mean, her most significant damage is a very significant hearing loss and the cognitive deficits that she's had. It's a parent's nightmare. I'm sorry. It's a parent's nightmare, this case. I'm afraid that it is. Right. But if you want to save some time for rebuttal, I think, unless there's questions. Thank you, Your Honor. Good afternoon, and may I please the Court? My name is Anthony Long. I represent the defendants in this case. This afternoon, the defendants request that this Court affirm the order of the Circuit Court of Cook County, affirm the Court's order compiling production of the subject medical records,  and affirm the overruling of the asserted privilege. This Court should affirm because the record in this case demonstrates that the plaintiff has most certainly put the patient's mental health at issue or otherwise waived the protections of the act in at least three separate venues during the progression of this case. And finally, as was mentioned in the opening remarks from Mr. McCardle, we believe that even if the Court disagrees with us on these serial labors, that fundamental fairness would apply here. Turning to the first venue, the pleadings. Now, this Court's job would be the easiest in the world, I think, if the plaintiff's complaint said in ink, we intend to recover, we pray for, damages of a psychiatric, psychological, or emotional nature. It's been my practice over the past 15 years that good lawyers like these lawyers don't do that. They don't do it. And I don't cast any aspersions on that, but he is an advocate. Mr. McCardle is a wonderful advocate. And so the complaints I see, including Mr. McCardle's, they are subtle. They are the intent of that drafting is to be nimble and to be able to negotiate things as the case progresses. And quite frankly, I don't think 615 requires much in terms of factual damages pleading in the complaint. And so we see from great attorneys this nimble sort of pleading. But even if we look at this nimble pleading, the prayer for damages is sufficient for this Court to conclude on its own that plaintiff is signaling not only to the University of Chicago and Dr. Yamini, but to the lower court and to your honors, that they certainly intend to seek unlimited personal injury. Now, I will remark that the First District years ago in a case called Pavlik quite bluntly said emotional injury is personal injury. And I think that's important because when we look at the prayer for damages in this complaint, he is seeking unlimited and unqualified personal injury damages, okay? This is the broadest statement. He doesn't say in mind or body, and we know why he doesn't as a draftsman, but he says it without saying it. There are no limitations in here. We're aware of cases in the trial court and in the appellate court where a plaintiff may in the complaint qualify the damages they're seeking. They will swear off of emotional damages or psychiatric damages or psychological damages. Or as they feel themselves losing the motion to compel in the trial court, they will try to swear off of it. Or when they're in appeal, they will swear off of it. In an attempt to shield the records, in an attempt to prevent the defense counsel from learning all of the facts about the situation that they're going to be called upon to defend at trial in the circuit court of Cook County. In addition to that broad pleading, there is a provision in his damages prayer that broadens it substantially. He wants to recover for the serious sequelae of infectious meningitis. The record and the briefs teach all of us that infectious meningitis can cause physical harm and emotional harm. Nobody has disputed that. And in fact, Borchardt, whose report was freely disclosed in this case, and we'll get to the Borchardt report and why I think that that on its own is a separate waiver. But in the Borchardt report, she was hired to do three things. Evaluate cognitive deficits, behavioral deficits, and emotional deficits. It's on page one of her report. That's what she was asked to do. And she did that. And throughout the report, either through her own conclusions or through the answers that were provided by reliable historians, which the good doctor does not dispute, she talks about anxiety and depression occurring after or getting worse because of the bowel meningitis. So either through the nimble but broad damages prayer or through this declaration here that they wish to recover all damages for the serious sequelae of infectious meningitis. This is sufficient right here. As the Rita court says, it can be waived in the pleadings. It's waived in this pleading. But the Rita court also says recipient does not introduce his mental condition merely by claiming pain and suffering. True. I concede that. But here, this is not simply a claim of pain and suffering. This is pain and suffering plus. Pain and suffering plus what? Any and all sequelae that come from the typical presentation of infectious meningitis and the suffering that comes from that, which by definition, by textbook, is going to have some physical manifestations, which I think plaintiff wants to stress to you. Plaintiff talked about the hearing loss. Plaintiff talked about the lethargy or the fatigue. But we can't forget what's also in Dr. Borchardt's report, which are behavioral and emotional sequelae from this situation that the plaintiff underwent. Now, turning to discovery, this is the second venue where I believe the plaintiff has put the mental health condition at issue. We sent a standard interrogatory number three, which asked the plaintiff to disclose. Tell us all of the doctors that you believe have treated this patient for injury that was the result of the occurrence. And listed was Borchardt. Okay? That means that Borchardt is disclosed as a witness in this case. It's somebody whose records we can get, and that is somebody who is going to be called to the stand by the plaintiff. She will testify consistent with her report, I suspect. And when she's on the stand, I suspect, Borchardt will say, this patient has behavioral, cognitive, and emotional harm as a result of the bout with infectious meningitis. Okay? Simply by answering the interrogatory, I think I have another waiver. In addition to the interrogatories and request to produce documents, plaintiff gave us the Borchardt report. By giving us that report, I mean talk about affirmatively putting at issue everything in that report. In that disclosure, the Borchardt disclosure puts at issue everything in that report, and that includes the three categories that Borchardt was called upon to analyze. Again, cognitive deficits, behavioral, and then emotional. At this point, I want to veer into the fundamental fairness exception because I think it's tied in with Dr. Borchardt. Did she report on the emotional? Yes. Okay. Yeah, she did. And that is deemphasized because plaintiff has to deemphasize it in order to win. Plaintiff has to say this is a standard RITA case with an organic brain injury that has caused physical injury and nothing more. And by the way, if I have claimed nothing more, I would like to withdraw that now before the defendants learn the truth about the patient's baseline cognitive, behavioral, and emotional presentation. Well, since you're on this, this is my big question for you. Why can't whatever concerns you have, why can't they be taken care of by some limitation? If you think that the plaintiff is asking for damages that you, you know, that are really putting this at her mental health at issue, why can't you just limit damages? Why can't you just get an instruction to the jury? Why can't you take care of it that way? If the plaintiff wants to keep these records protected and you think that somehow undermines your ability to defend some part of this case, why can't it be handled that way? Because Rule 201 entitles the defendants to a full disclosure of all relevant evidence, and when we study that relevant evidence, we learn there, from there, whether it's admissible or not. Just as the plaintiff drafts a nimble complaint, a defendant is not going to approach the plaintiff and say, let's make a trade. I will take less information about a patient who was claiming significant damages in the circuit court of Cook County, and in return, give me your description, or let's stipulate to your description, of what categories of damages are in or out. Cognitive, behavioral, and emotional damages can affect each other. Yeah, but cognitive are not, in any sense, a waiver of your privilege. I agree. I agree. And that's why I stress to this Court that interrogatory number three, plaintiff's complaint, the Borchardt report, is cognitive plus. By answering the interrogatory in that fashion, by voluntarily giving us the report, by having Dr. Borchardt at the ready to testify in this case, I am going to get hit with testimony, and I need to be able to cross-examine Dr. Borchardt. I need to look at the records that your honors have looked at so that I can understand Dr. Borchardt. Dr. Borchardt didn't look at those records, did she? There's no evidence she looked at those records. I'm excited about that prospect. Yeah, because once I take a look at those records, if your honors allow me to, then I will be able to truly understand what this patient's baseline condition was. And I suspect, I can't know for certain, and maybe I'm a pessimist, but I'm just a pragmatist and a defense attorney, I suspect that when I look at those records, if I do one day, therein will lie my cause and effect defense. I will see in those records that the patient had a difficult, challenging, and damaging baseline emotional presentation. And if she had a baseline emotional presentation of X, and if Borchardt, without knowing those records, has said, look, she's at X because of the meningitis, I got Dr. Borchardt, and I can show the jury. The problem here, though, is that we're talking about an exception to the act. When we start talking about an exception to the act, it's more than just being relevant. It needs to be relevant and not prejudicial, and that's what I think you're failing to see. Well, let me address potential prejudice. It's difficult for me to provide my assessment of whether this is above or below the line of prejudice. I will tell you that I was at the hearing on the motion to compel and that the lower court judge gave a long and eloquent discussion of the reasons why he made the decision he did. I view that as the trial court's assessment that this is not overly prejudicial. Ergo, Section 10A1 is triggered. Ergo, we have satisfied the relevant standard. We've overcome the privilege, and they're not too prejudicial. Added to that, the abuse of discretion on that finding by the trial court is abuse of discretion. Abuse of discretion is a tough road to hoe, much tougher than the road I have to hoe under 10A1, and I submit that when this court reviews the sealed report of proceedings from the trial judge below, the court will conclude that his reasoning was reasonable and therefore cannot be reversed on abuse of discretion. I have a question about it, and I know you haven't been able to review it, but you were there. I was. So he says it's best for the expert to determine whether there is a connection between Kirsten's alleged physical complaints post-meningitis or whether there is an emotional component to those, which I think is probably what you're saying, but I'm not sure I understand what he's saying. Well, I think what he's saying there, I think what he's telling this court and telling the plaintiff is that in order for me to locate and hire and give the requisite records to an expert so that they can have the foundation to make those opinions, they need the raw material. They're going to need to conclude whether her baseline has gotten worse as compared to her pre-occurrence emotional state and her post-occurrence emotional state, and that's where the battle will be had. It's not going to be me offering an out-of-branch jury instruction or stipulation to the plaintiff. We are going to litigate this case. It's going to be adversarial litigation. I am going to have my experts. Perhaps they will examine the young lady, perhaps not, but they need the records. If I can't get them the records, their opinions are going to be less valuable, maybe stricken as speculative in the entirety. In fact, the way we stand right now, this limbo that we're in pending Your Honor's decision in this case, I don't have the most critical records, I suspect, that give a true and accurate picture of the young lady's emotional baseline. But nevertheless, I think plaintiff, although they swear off it today, it's too late to swear off it, I think, by the way. If you read the FISA case, the FISA case rather bluntly said, look, nobody swore off this below. You're trying to swear off of it now. You might do that in the future, but, you know, it takes two to tango. Maybe the defendants don't want to agree with you. Maybe the defendants just want the records that will give them full 201 disclosure. Now aside, so I was trying to get in the fundamental fairness judge. I know it is extraordinarily narrow. Nobody has probably touched it since D.C. versus S.A. because it does certainly run the risk of swallowing the rule. I mean, in a way, all privileges reveal unfairness to the party who didn't get the documents. It's sort of baked into the recipe. But what's intriguing about D.C. versus S.A. is that the court said, you know what, the defendant might find their defense in those records. In D.C. versus S.A., the defendant suggested that the plaintiff had committed suicide, wanted to get those records, and wanted to see whether they could make a suicide argument at trial and win at the trial. I believe I'm similarly situated to that party in D.C. versus S.A. insofar as this Court, the Illinois Supreme Court, has always said that there are two aspects to proximate cause, cause in fact and cause in law. Plaintiff has to prove cause in fact at trial. Plaintiff has to prove to the jury that notwithstanding, I'm sorry, that but for the alleged negligence, the patient would not have these emotional injuries. I think that if I find in those records enough information to demonstrate that her baseline emotional status hasn't changed or has only moved a little bit, I'm the defendant in D.C. versus S.A. right now. Those records are going to give me my defense. I'm going to have a cause in fact defense. Well, let me just go back to my way I was brought up. If meningitis causes a traumatic brain injury, okay, agreed, and it can result in ten different manifestations, right? Yes. Your right arm goes paralyzed. You can't blink. You know, something like that. And the ninth and tenth are it can result in emotional outbursts or some psychological mental health type related problem. If I do not seek any compensation for the emotional distress or emotional trauma, I only seek compensation for the fact that I can't raise my right arm or I can't blink with my right eye, then wouldn't that allow for the exclusion of any mental health records as it related to the items nine and ten that aren't at issue in this meningitis-caused injury? I understand your question completely. Good, because I've been through that. It's a good question. I've been through that. Let me tell you about it. They try to flatter me, but it's not getting to my ears. I'm sorry. I think I appreciate the nuances here, but until the plaintiff expert is deposed as to what the damages were caused by this meningitis incident, if he's not seeking compensation or money damages for emotional injury, then it's not at issue. That's where we're at. So unless you get through your discovery and the expert says as a result of this meningitis, she suffered a traumatic brain injury that resulted in she can't raise her right arm or she can't blink, whatever it is, and that's it, then this damages expert is going to have to say as a result of that she's entitled to $10.87 or whatever it is. You're pushing it way too late. You're suggesting that we have to wait until plaintiff's F3s, which in Syracuse County is roughly 70 or 80 days before trial, the way things are going. Right. And at that moment we're going to decide whether the plaintiff has put it at issue. And if that deposition results in those concessions, and I suppose we can all take a deep breath, but if it doesn't result in those concessions, it would be impossible for me to convince the 22nd floor or the 20th floor that I need to restart medical records discovery in order to adequately then produce my witnesses probably 30 days later under Rule 213 F3 and somehow respect the 60-day rule in all of this. Unless we put that in our decision that it's without prejudice to raise it again if you can demonstrate that it is in fact an element of their damages. It just seems to me that it's a great question presented way too early because Mr. Ricardo is saying we're not going to ask for it, and I understand your position of I've heard that before. So I see your point, you know. Let me keep trying to convince you. In Rita, the Supreme Court said that we can find a waiver in the pleadings. That demonstrates that there are cases where we're nowhere near F3 and we learn about the waiver. I suggest to you that we have the waiver in this complaint. I suggest to you that we have that waiver in the discovery. We should not be waiting that long to find out. To answer the question that you had originally and that both of your honors were eager to hear the answer to, I will tell you that it's a two-step process. The trial court who evaluated this and this court evaluating it now makes a determination as to whether it has been put at issue thus far. The answer is yes, I suggest. And then I get to have these records. I get to look at them and I get to formulate my defenses. If it turns out as we approach trial that the ammunition that I have, that the material that I have, and the way I intend to use it is too explosive, then the trial judge will enforce Rule 403 balancing and knock me out. And then I'm done. That is a much more orderly and consistent way to do it. That's not how privileges work. It works that way if they put it at issue. Yes, but only if they put it at issue. Correct. And we know that your argument is that they have in their pleadings, in their damages of prayer, that they did in their interrogatories and that they did when they gave you the abortion report. Are those the three things? You've got the pleadings, the discovery. Were those the three? That's your argument. We also argue fundamental fairness. I do. And I think what both Justice Smith and Justice Pierce have suggested is that fundamental fairness may be suggesting to us that this is too soon. And I think they both suggested is that perhaps after oral discovery has taken place, maybe then the information will become both relevant and non-prejudicial, and therefore the inception would apply. I think the statements that the justices have alluded to, of course, no decisions have been made, is that maybe this is just too soon. Let me say that the fundamental fairness exception is an arrow in my quiver. I get to shoot that arrow and see if it helps me. I think what's being described here is that somehow the fundamental fairness exception is becoming an arrow in the quiver of the plaintiff. In other words, they say it's too soon, let's see how things develop. Under the fundamental fairness doctrine, let's wait and see. And trust me, I'm going to make good on my concession at oral argument. I don't think we can use the fundamental fairness exception as a shield for the plaintiff. It's sort of a weapon for the defendant. The final venue where I believe a waiver occurred is at the hearing. The Circuit Court of Cook County read aloud from the medical records. Plaintiff's attorney was present, I was present. Those highlighted portions were read aloud into an open courtroom. The best analogy I can provide to your honors is that at trial, when evidence is being offered that is privileged, you have to make a rapid-fire objection. And to let the circuit court talk for as long as he did, multiple sentences, perhaps multiple paragraphs, if my memory serves me correctly, and then at the end of this robust publication to say seal it. That's an independent waiver. Rita says you can waive it in hearings before the court. My best case on point is People v. Legans. I put it in the brief. This has happened. The appellate court has looked at the failure to contemporaneously object during a court hearing to the recitation of material that is arguably protected under the Act. And that failure to contemporaneously object has been used by the appellate court to support affirming a waiver. For all of these reasons, I would ask that this Court affirm. Thank you. Thank you, counsel. Briefly, just a couple of points. First of all, Judge Ehrlich's comments during his ruling, it wasn't a royal argument. It was ruling. And it was in essentially an empty courtroom. Myself, Mr. Longo, and the judge, there may have been another attorney from his firm. It helped operate to object to the judge's ruling. That's the point that I was going to bring up. Am I supposed to interrupt a sitting judge and say, shut up? You can't do that. How are you guys against that? I'm not going to go out there. Thank you. I'd also like to point out that I understand the argument about fundamental fairness. That was brought up in the D.C. case. And that is so far-field from this or any other case. Fundamental fairness is not an arrow or a shield. It's a narrowly drawn, essentially equitable principle. And in that case, it was essentially found that the plaintiff was attempting to subvert the legal process. That's not what anybody's doing here. That's, I believe, far-field from where we are today. The damages paragraph that was brought up from the complaint, where plaintiffs sought the serious sequelae of the infectious meningitis. Just so the Court is aware, if you go further in the complaint, there's a certificate of merit attached there, too. And those are the exact words by the neurosurgeon who took care of this child. Not who took care of the child, but who acted as my reviewing physician. And much of the language in the complaint was taken specifically from the report for legal reasons, to ensure that we didn't go beyond what we could do. I would also point out, in the answers to interrogatories, much has been said about answer to interrogatory number three, where we identified Dr. Borcher. And the question was, who has provided any treatment since the date of the occurrence? It was an honest answer. Interrogatory number two sought all treatment that she had had before. And we specifically raised this privilege in answer to interrogatory number two, advising them in advance that she had had mental health treatment that we were not going to disclose in any way because of the protections of the Act. Dr. Borcher, in answer to interrogatory three, was not disclosed as a witness. And her report is her report that was made for educational purposes, through the educational system in which this child, where she's going to school. And it's not a disclosure of testimony that we're going to bring into this courtroom. It's simply her evaluation. Will there be testimony regarding the damages that this child suffers as a result of this? Certainly it will. And it will be limited to the physical injuries that she has, and the sequelae that are not psychological in nature, the cognitive, those cognitive types of issues. However, I would point out, with regard to emotional, Rita clearly and unequivocally, in that case, the plaintiff saw damages for emotional outbursts. Mrs. Rita testified that he's become mean. He's become depressed. There's other elicited testimony in that case that is clearly emotional. And the court found that those are the types of frustrations that any normal person has as a result of a brain injury. It's frustrating. People recognize that they can no longer do things that they used to be able to do. And I think that that's a balancing act that this court needs to address. And more importantly, needs to recognize that the court found that claiming a neurologic injury, even though it has a component of emotional injury, as I just noted, doesn't open the door, doesn't place the plaintiff's mental health at issue. Thank you. Thank you. Thank you. Thank you both. Really interesting issue. And I will take this matter under advisement.